Philip Bass v. Commissioner.
Bass v. Commissioner
Docket No. 73384.
United States Tax Court
T.C. Memo 1960-279; 1960 Tax Ct. Memo LEXIS 2; 19 T.C.M. (CCH) 1541; T.C.M. (RIA) 60279; December 30, 1960
*2 Held, that in the years in question the petitioner, a waiter, received tips in a greater amount than reported by him in his returns, but in a lesser amount than determined by the respondent. The amount of such tips found. Held, further, that the petitioner has failed to show error on the part of the respondent in determining that he is liable for additions to tax for each year for failure to file a declaration of estimated tax. Philip Bass, pro se R.F.D. 2, Rt., 301 Kent Cliffs, Carmel, N. Y. John A. Dunkel, Esq., for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined deficiencies in income tax and additions to tax for the calendar years 1952, 1953, and 1954 as follows: Additions to Tax
Section
Section
Section
Section
293(b)
6653(b)
294(d)(1)(A)
294(d)(2)
Year
Income Tax
I.R.C. 1939
I.R.C. 1954
I.R.C. 1939
I.R.C. 1939
1952
$414.02
$207.01
$39.10
$26.07
1953
338.14
169.07
29.33
19.56
1954
287.00
$143.50
20.97
13.60
*3 At the hearing the respondent conceded error in the determination of additions to tax under section 294(d)(2) (for substantial underestimation of estimated tax) and on brief he conceded error in determining additions to tax on account of fraud under sections 293(b) of the Internal Revenue Code of 1939 and 6653(b) of the Internal Revenue Code of 1954. The principal issue is whether the petitioner, a waiter, failed to report all the tips he received in each year. Findings of Fact The petitioner is an individual who during the years 1952, 1953, and 1954 resided in Brooklyn, New York. For each of those years he filed a joint income tax return with the district director of internal revenue, Brooklyn, New York. During the years in question the petitioner was a member of a waiters' union and was employed as a waiter in the banquet department of the Waldorf Astoria hotel in New York City (hereinafter referred to as the Waldorf). During the year 1954 he left the Waldorf and was employed for a portion of that year as a waiter in the banquet department of the Savoy Plaza hotel in New York (hereinafter referred to as the Savoy). The banquet department of the *4 Waldorf provides special rooms wherein various groups or organizations may have private banquets or parties. It employs waiters, head waiters, and captains of waiters who are assigned exclusively to that department. About 200 waiters were employed in the banquet department during the years 1952, 1953, and 1954. Such waiters are divided into groups known as "watches," described as A, B, C watches, and a "number" watch. They are so grouped for the purposes of assignment of jobs. At times the Waldorf would also have to call upon the waiters' union for extra men. During the years in question the banquet department of the Waldorf generally charged its patrons a surcharge of 15 per cent of the total bill for food and beverages as a gratuity or tip for its waiters, head waiters, and captains of waiters. These amounts were collected by the hotel and distributed by it. After receipt of the 15 per cent charged patrons, the hotel turned it over to the office of the head waiter of the banquet department for distribution. Two-thirds of this amount was distributed in cash to the waiters and pantry men, and the remaining one-third was distributed to other personnel. This division of the gratuities *5 among banquet department personnel was in accordance with an agreement between the Waldorf and the waiters' union. During the years 1952 through 1954 all waiters of the banquet department of the Waldorf were paid at the same wage rate per function if they worked the same number of hours. A banquet waiter who worked more functions or parties received more wages than a waiter who worked fewer parties and also received more gratuities. At each function or party certain waiters were designated to perform special services, such as, staying after the affair to serve beverages, for which they received extra wages and additional gratuities. This was all taken into account in the division of the tips. Thus, if a waiter did not work after the banquet, he would not receive any portion of the tips for the beverages consumed after he had left. One employee had charge of making the assignments of the waiters and it was he who decided who would receive special work. Some of the watches come in and set up the banquet, others go off after the coffee is served, and then some men are retained to finish up the function. Generally there were two waiters assigned to each table, and occasionally at some *6 functions there would also be a wine waiter assigned to each two to four tables. If, at a particular function, there were 50 waiters working, all gratuities received and allocable to waiters were divided equally among the 50 waiters, except that if some were kept afterwards for serving beverages they would receive more than the ones who had merely served the dinner. During the years 1952, 1953, and 1954 the banquet department of the Waldorf received as tips from patrons the amounts of $1,060,297.87, $1,050,777.13, and $1,148,473.50, respectively. During those years the banquet department paid wages to its regular and extra waiters, captains of waiters, and head waiters in the respective amounts of $636,661.93, $605,203.35, and $664,477.48. Of these total wages paid during 1953 and 1954 the amounts of $110,886.16 and $118,115.34, respectively, were paid to head waiters and captains, the balance being paid to waiters. There are no available records to show the amount of wages paid to head waiters and captains during 1952. However, the banquet department employed approximately the same number of head waiters and captains in that year as it did in 1953 and 1954, and during all three *7 years each group was paid at approximately the same ratio, although wages in general may have increased somewhat. Using the above information obtained from the Waldorf, the respondent determined, with respect to the waiters of the banquet department, a ratio of tips to salaries. This ratio was computed to be 140 per cent for 1952, 141 per cent for 1953, and 140 per cent for 1954. He assumed that for the year 1952 the ratio of salaries paid to waiters on the one hand and to head waiters and captains on the other, would be approximately the same as in the two subsequent years, since the total wages received and the total tips received were approximately the same as in the two subsequent years. In determining the tip or gratuity income of individual waiters, however, the respondent did not use the computed ratio; rather, he reduced the ratio to 120 per cent in order to allow for possible individual differences among the various waiters. During the year 1954 the Savoy operated a banquet department similar in function and operation to that of the Waldorf. It also charged its patrons a fee as a tip or gratuity for waiters and other personnel. The fee generally charged was 15 per cent, *8 although it varied somewhat. However, the average was about 15 per cent. The banquet manager distributed this 15 per cent to waiters and other personnel. One-fifth was paid to head waiters, captains, and other personnel, and four-fifths was paid over to the union delegate for distribution to the waiters. All waiters in the banquet department were paid wages at the established union scale. Two different spaces were used in the hotel by the banquet department and there were two groups of waiters. From the books and records of the Savoy the respondent found that in 1954 the total salaries paid to waiters serving the banquet department was $39,109.27; and that the total banquet department's sales of food and beverages amounted to $595,385. He determined that the total tips paid to the banquet department amounted to 15 per cent of the sales, or $89,307.75, of which four-fifths, or $71,446.20 was received by waiters; and that the ratio of waiters' tips to waiters' salaries was 182 per cent. However, in applying this ratio to determine the amount of tips received by an individual waiter at the Savoy, the respondent reduced the ratio to 140 per cent to allow for possible errors. The petitioner *9 started working as a waiter at the Waldorf in 1947 or 1948. In 1949 or 1950 he raised an issue with the hotel and with the union as to whether he and other waiters were receiving their proper amount of the gratuities received by the hotel. He and another waiter, on behalf of about 80 waiters, filed a petition in court for an accounting, claiming that the hotel owed the waiters $3,000,000. The case was settled in 1956 by the payment of $30,000 by the hotel to the union for an educational fund. As a result of the petitioner's bringing this suit, the hotel employees who were in charge of assignments adopted a practice throughout the years in question of assigning him to less desirable tables and to functions at which no specific charge was made by the hotel for tips and where the tips given would average less than 15 per cent. The petitioner, throughout the years in question, remained in what was known as the "number watch," over which the other watches had preference. Petitioner's assignments were generally on the third floor of the Waldorf where such functions as dinners, weddings, receiptions, and dances were held. Some parties or functions would involve a higher price for food and *10 drink and the gratuities would be much greater, but the petitioner was not assigned to these more profitable functions. Since the petitioner shared only in the gratuities received for a particular function to which he was assigned, and since he did not customarily work at the more lucrative functions, the proportion of tips which he received through the hotel, in relation to the salary which he received, was less than in the case of the average waiter. The petitioner went to work for the Savoy in September 1954. In that hotel there are two sections which the banquet department operates, one on the second floor, using about 12 to 15 waiters, and one on an upper floor, using about 5 waiters. The gratuities received by individual waiters on the upper floor exceeded those received by waiters on the second floor, partly because larger tips were paid on liquor purchases on the upper floor, and partly because there were fewer waiters on the upper floor. The petitioner during 1954 worked on the second floor. In addition to the tips which were distributed to him from the hotels, the petitioner also received at both hotels tips directly from patrons. The hotels had kept a record of tips *11 received by each waiter, but these records are not available. The tips received were in cash, and the petitioner kept no records of tips received. He took his money home and turned it over to his wife who would budget the money for expenditures. He has no bank account and no car, and lives in a low cost housing development. In his returns for the years 1952, 1953, and 1954 he estimated the amount of tips which he received, reporting the respective amounts of $1,043, $940, and $875. In those returns he reported wages, not including tips, from the Waldorf in the respective amounts of $2,533.29, $2,283.25, and $1,470.53, and reported wages from the Savoy for 1954 in the amount of $646.33. The respondent in the notice of deficiency applied the ratio above referred to and determined that the petitioner received tips from the Waldorf for the years in question in the respective amounts of $3,039.95, $2,739.90, and $1,764.64, and that he received tips from the Savoy in 1954 in the amount of $904.86. The respondent thus held that the petitioner under-reported his tips for the years 1952, 1953, and 1954, in the respective amounts of $1,996.95, $1,799.90, and $1,794.50. In the notice of deficiency *12 the respondent also determined additions to tax for failure to file declarations of estimated tax, pursuant to section 294(d)(1)(A) of the Internal Revenue Code of 1939, in the respective amounts of $39.10, $29.33, and $20.97. During the years 1952, 1953, and 1954 the petitioner received tips, while working at the Waldorf, in the respective amounts of $2,500, $2,300, and $1,500. Opinion Since the petitioner did not keep records of the tips which he received during the years 1952, 1953, and 1954, the respondent resorted to the method set forth in our Findings of Fact to compute the amount of such tips. The respondent computed the ratio of all tips received by all waiters in the banquet department of each hotel to total wages received by such waiters, reduced such ratio to allow for variations in the case of individual waiters, and then applied such reduced ratio to the wages received by the petitioner. As we pointed out in Dorothy L. Sutherland, 32 T.C. 862, every taxpayer is required to maintain adequate records which will show to him and to the respondent the amount of all types of income received in each year; that if a taxpayer does not keep such records, the *13 respondent is authorized to make a computation of the amount of income in accordance with such method as in his opinion clearly reflects the full amount of income received; and that the burden of proof is upon the petitioner to show error in the respondent's determination. Although the petitioner testified that he reported in his returns all the tips which he received, he admitted that he did not keep any records and that the amounts which he reported were no more than estimates. We are unwilling to accept his unsubstantiated testimony that the amounts which he reported are correct. However, we are satisfied from his testimony that as a result of his bringing suit against the Waldorf and the union, claiming that waiters were not receiving their full share of tips, he was given assignments at the Waldorf which resulted in his receipt of a lesser amount of tips than other waiters received. The petitioner's testimony in this respect has not been controverted. We have concluded, accordingly, that because of this particular circumstance in the case of this petitioner, the respondent's formula, even though it makes some allowance for variations in the case of individual waiters, results *14 in attributing to him more tips than he actually received as a result of his working at the Waldorf. Based upon the record as a whole, and exercising our best judgment, we have concluded, and have found as a fact, that the tips which the petitioner received in the years 1952, 1953, and 1954, while working at the Waldorf, were in the respective amounts of $2,500, $2,300, and $1,500. See Cohan v. Commissioner (C.A. 2), 39 F. 2d 540, and Dorothy L. Sutherland, supra.
Insofar as the evidence shows, there was not a similar unfortunate relationship between the petitioner and the Savoy. Although the evidence shows that during the relatively short time he worked at the Savoy in 1954, the petitioner worked on the second floor where the tips were less than those received by waiters working on the upper floor, we are not satisfied that the respondent erred in his determination of the tips received by petitioner while working there. As stated, the respondent's method of computing tips made allowance for variations in the case of individual waiters, and upon this record we cannot find that his method resulted in a determination of tips in an amount in excess of the amount *15 actually received by the petitioner while working at the Savoy. The respondent's determination of tips received by the petitioner from the Savoy in 1954 is approved. The respondent also determined additions to tax for each of the years 1952, 1953, and 1954, pursuant to section 294(d)(1)(A) [1] of the Internal Revenue Code of 1939, for failure of the petitioner to file a declaration of estimated tax. The burden of proof upon this issue is also upon the petitioner. A. E. Hickman, 29 T.C. 864. He has introduced no evidence with respect thereto. In his returns he does not claim credit for any amounts paid as estimated tax. We hold that the respondent did not err in determining that the petitioner is liable for additions to tax. The correct amount of such additions will be computed in the recomputation under Rule 50. Decision will be entered under Rule 50. Footnotes
1. Section 6654(h) of the Internal Revenue Code of 1954 provides that section 294(d) of the Internal Revenue Code of 1939↩ shall continue in force with respect to taxable years beginning before January 1, 1955.